# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### HARRISBURG VICINAGE

| | | |
|---|---|---|
| **JAMES WILLIAM HICKS, JR.** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **DANIEL H. GRAFF;** | : | |
| **DAVID M. WHITCOMB;** | : | **NO.** |
| **MARK A. HAYNES; ADAM S. MARCINI; and** | : | |
| **THE COUNTY OF YORK, PENNSYLVANIA,** | : | |
| **THROUGH ITS DEPARTMENT** | : | |
| **OF CORRECTIONS** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendants** | : | |
| | : | |

## COMPLAINT AND JURY DEMAND

The plaintiff, James Williams Hicks, Jr., a resident of Dover, Pennsylvania who is currently serving a sentence of incarceration in Waymart, Pennsylvania, avers the following as his Complaint against the defendants named above.

## INTRODUCTION

1.     This is a Civil Rights action for money damages brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988; the Eighth and Fourteenth Amendments to the United States Constitution; and the Constitution of the Commonwealth of Pennsylvania, against: (i) defendants Daniel H. Graff, David M. Whitcomb, Mark A. Haynes, and Adam S. Marcini, in their individual and official capacities as correctional officers for the Department of Corrections of the County of York, Pennsylvania (collectively, the "Individual Defendants"); (ii) the County of York, Pennsylvania, through its Department of Corrections; and (iii) supervisory officials of the York County Department of Corrections, who plaintiff expects to identify in discovery.

2.      As described in more detail below, the Individual Defendants misused the authority of their official positions and their considerable influence over inmates to coerce Mr. Hicks and other inmates of the York County Prison to engage in humiliating, painful and physically harmful activities that the Individual Defendants referred to as the "Retard Olympics."

3.      The Retard Olympics, which the Individual Defendants organized on various occasions at the York County Prison ("YCP") from 2008 through 2013, included the following:

  a. One or more of the Individual Defendants would choke Mr. Hicks to the point of unconsciousness and then suddenly release pressure on his neck so that he would revive;

  b. One or more of the Individual Defendants would punch Mr. Hicks in the arms and legs until they went numb;

  c. One or more of the Individual Defendants would punch Mr. Hicks in the legs, with the goal of inflicting a "dead leg" that had no sensation and prevented Mr. Hicks from walking;

  d. One or more of the Individual Defendants would punch Mr. Hicks in the shoulders, to determine if he could take the blow without falling;

  e. Mr. Hicks was obliged to wrestle another inmate, David M. Wright, until one or more of the Individual Defendants decided that Mr. Wright had won the "match;"

  f. Mr. Hicks was obliged by one or more of the Individual Defendants to: (i) drink one gallon of milk in one hour, which inevitably ended with Mr. Hicks vomiting the quantity of milk which he had managed to consume within that time period; (ii) eat an entire spoonful of cinnamon, which likewise caused Mr. Hicks to become ill and vomit; (iii) snort spicy ramen noodle flavoring powder; (iv) snort

crushed up hard candy; (v) eat entire pieces of fruit (bananas, grapefruit, oranges, etc.) skin, seeds and all; (vi) drink a bottle of water containing pepper spray foam that had been improperly obtained by the Individual Defendants from YCP security supplies; and (vii) drink a concoction known as "Mystery Soup," which consisted of olives that had been left unrefrigerated for several weeks, and then mixed with Windex or similar cleaning supplies.

     g.  Defendant Graff, a powerfully built former United States Marine, would wrestle inmate David Wright, during which Graff would occasionally choke Mr. Wright to the edge of consciousness.

4.    Mr. Hicks went along with the acts described above, hoping that his participation would satisfy the Individual Defendants, and dissuade them from devising more deviant and violent forms of "amusement."

5.    In return for his coerced participation in the Retard Olympics, Mr. Hicks was given trivial favors by the Individual Defendants, such as extra coffee and "lounge food," the YCP term for food taken by the Individual Defendants from the facility's staff cafeteria.

6.    The violations of plaintiff's rights that are described in this Complaint arose from the policies and customs of the York County Department of Corrections, as implemented by the Individual Defendants and other Corrections Officers named below, to allow and/or condone the humiliation of inmates for the amusement of Corrections Officers, particularly where the inmates, as was the situation with Mr. Hicks, suffered from physical, mental and/or emotional disabilities.

7.    The Individual Defendants knew that Mr. Hicks had been diagnosed with Bi-Polar Disorder and Attention Deficit Disorder at the time he was coerced into participation in the

Retard Olympics.  Thus, an inmate such as Mr. Hicks who should have been given greater protection from abuse while in custody became the target of increased abuse, meted out by one or more of the Individual Defendants without regard to Mr. Hicks' well-being.

8.      By information and belief, Mr. Hicks and Mr. Wright are not the only YCP inmates who were coerced into participating in the Retard Olympics.  To the contrary, discovery is expected to reveal that the Retard Olympics were a common event, known to YCP administrative personnel, and tolerated from 2008 through 2013, at the expense of inmate security and well-being.

9.      Mr. Hicks reserves the right to amend this Complaint to name as defendants those supervisory Corrections Personnel, such as wardens and deputy wardens, who are shown in discovery to have known about the Retard Olympics, and further to have taken either no action, or any effective action, to bring a stop to them.

## PARTIES

10.      Plaintiff, James William Hicks, Jr., is a resident of Dover, Pennsylvania, currently serving a sentence of incarceration at SCI Waymart, P.O. Box 256, Waymart, PA 18472-0256. Mr. Hicks expects to be paroled during the pendency of this action, and thus be able to appear for deposition and trial without undue delay.

11.      Defendant Daniel H. Graff ("Officer Graff") is an adult resident of York County, Pennsylvania, with a last known residence address of 1279 Haines Road, York, PA 17402-9583.

12.      Defendant David M. Whitcomb ("Officer Whitcomb") is an adult resident of York County, Pennsylvania, with a last known residence address of 3838 Silver Spur Drive, York, PA 17402-5133.

13.      Defendant Mark A. Haynes ("Officer Haynes") is an adult resident of York

4

County, Pennsylvania, with a last known residence address of 401 Valley Road, York, PA 17407-1251.

14.     Defendant Adam S. Marcini ("Officer Marcini") is an adult resident of York County, Pennsylvania, with a last known residence address of 495 Capital Drive, York, PA 17406-6945.

15.     Defendant, the County of York, is a political subdivision of the Commonwealth of Pennsylvania with offices located at the York County Administrative Center, 28 E. Market Street, York, PA 17401.  At all times relevant to this Complaint, the County of York: (i) was the public employer of the Individual Defendants, (ii) operated YCP, (iii) was responsible for the well-being and good treatment of inmates at YCP; and (iv) was responsible for the hiring, training and employment discipline of the Individual Defendants.

16.     The York County Department of Corrections is a department and/or instrumentality of defendant, County of York, with offices located at York County Prison, 3400 Concord Road, York, PA 17402.

17.     The Individual Defendants were at all times relevant to this Complaint duly appointed and acting Corrections Officers of the County of York, acting under color of law, pursuant to the statutes, ordinances, regulations, policies, customs, and usages of the County of York, and the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1343 (a)(3), in that plaintiff seeks seek by this action to redress the deprivation, under color of State law, custom or usage, of rights, privileges and immunities secured to the plaintiff by the Constitution of the United States and other federal law.

19.     Venue of this action is proper in the Middle District of Pennsylvania, Harrisburg Vicinage, pursuant to 28 U.S.C. § 1391 (b), in that the defendants reside in the Middle District of Pennsylvania, Harrisburg Vicinage, and a substantial part of the events giving rise to the plaintiff's claims occurred in this same District and Vicinage.

20.     Mr. Hicks was unable to utilize and/or exhaust any administrative remedies relating to plaintiff's coerced participation in the Retard Olympics that may have been made available by or at the York County Prison, because he was immediately transferred to the Cumberland County Prison when the Retard Olympics became the subject of public media reports in 2013.  Mr. Hick's inquiry to the York County Prison as to the existence of any administrative remedies for his abuse by the Individual Defendants that could be utilized by Mr. Hicks from SCI Waymart has not been answered to date.

## FACTUAL BACKGROUND

21.     From 2007 to 2009, Mr. Hicks was serving a criminal sentence at YCP.  During this time period, beginning in the latter part of 2008, York County Corrections Officers Adam Marcini, Shane Druck and Chad Abel originated the Retard Olympics, and coerced Mr. Hicks into participating in the activities described above.

22.     In 2009, Mr. Hicks became violently ill after being coerced into drinking "Mystery Soup," and later overheard Officer Marcini ask Officer Druck what they should do if Mr. Hicks were to die.

23.     In time, Mr. Hicks was no longer willing to suffer humiliation and physical pain in return for lounge food and coffee.  However, Officers Marcini, Druck and Abel were unwilling to stop the Retard Olympics, and Mr. Hicks was afraid of retaliation by the Officers involved if he stopped his participation, or reported the Retard Olympics to YCP administration.

24.     Mr. Hicks' first round of exposure to the Retard Olympics came to an end when he was released from YCP in the latter part of 2009.

25.     Mr. Hicks returned to YCP in or around April of 2013.  Shortly afterwards, Officers Graff, Whitcomb and Haynes re-started the Retard Olympics, by engaging, on various dates, in the activities listed in paragraph 3 above.

26.     On a single occasion in the first half of 2013, on a date when Officers Graff, Whitcomb and Haynes were not working the block where Mr. Hicks was housed, Officer Marcini coerced Mr. Hicks into licking his boots and eating an entire Grapefruit, seeds and skin included, in return for coffee and cake.

27.     For the next several months, Mr. Hicks was regularly required to participate in the Retard Olympics, and was subjected by Officers Graff, Whitcomb and Haynes to the various acts listed in paragraph 3 above.  While Mr. Hicks cannot recall the precise dates of the activities at issue, he is certain that Officers Graff, Whitcomb and Haynes each engaged in each type of activity described in paragraph 3 (a) through (f) above.

28.     This second phase of the Retard Olympics began in early 2013, and lasted until the activities were made public later that year.

29.     During the second phase of the Retard Olympics in 2013, the level of participation by the Individual Defendants became more frequent, violent, and involved increasingly bizarre inmate activities, such as the ingestion of large quantities of milk and cinnamon, and the "Mystery Soup" described in paragraph 3 above, each of which inevitably led to vomiting by Mr. Hicks and the other inmates involved.

**COUNT I**
**42 U.S.C.§ 1983**
**JAMES WILLIAM HICKS v. THE INDIVIDUAL DEFENDANTS**

30.     Plaintiff incorporates the preceding averments of this Complaint by reference.

31.     At all times during the events described above, the Individual Defendants were engaged in a joint venture and/or conspiracy, assisting each other in performing the unlawful actions described above, and lending their physical presence, support, and the authority of their office to each other during the coerced participation of Mr. Hicks in the Retard Olympics.

32.     The actions and statements by the Individual Defendants, as described above, confirm that they acted maliciously, with the intent to harm Mr. Hicks and the other inmate participants in the Retard Olympics, and with deliberate indifference to the harmful consequences to Mr. Hicks.

33.     The actions of the Individual Defendants, in abusing Mr. Hicks and other inmates of YCP, were outrageous and intolerable, not just among corrections professionals, but in society at large.

34.     The actions of the Individual Defendants as described above also violated applicable standards for the decent treatment of inmates, whether promulgated by corrections industry participants, or by Pennsylvania law.  See 37 Pa. Code § 95.221 (1) ("Before being assigned duties, all corrections personnel shall be given training as to the contents/application of this chapter and in their general and specific responsibilities, including the use of force, prohibition on the seeking and dispensing of favors to and from the inmate population and instruction in the prison's code of conduct and ethics.").

35.     As a foreseeable and direct result of the actions alleged above, Mr. Hicks suffered the following injuries and damages:

a.   The violation of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishment;

b.   The violation of his right to a reasonably safe and monitored incarceration environment under the Fourteenth Amendment to the Constitution of the United States of America and of Article I of the Constitution of the Commonwealth of Pennsylvania;

c.   Bodily injuries, including bruises, sprains, shoulder injuries, and abrasions of multiple sites;

d.   Shame and humiliation;

e.   Physical pain and suffering;

f.   Ongoing stigma among other inmates and correctional officers as a participant in the Retard Olympics.

g.   Scarring and other permanent physical injuries;

h.   Emotional trauma and loss of well-being.

**WHEREFORE,** the Plaintiff, James William Hicks, demands judgment in his favor and against the defendants, jointly and severally, in an amount exceeding $75,000, to be trebled pursuant to law, together with an award of punitive damages, attorney's fees pursuant to 42 U.S.C. § 1988, and taxable costs.

### COUNT II
### 42 U.S.C.§ 1983
### JAMES WILLIAM HICKS v. THE COUNTY OF YORK

36.   Plaintiff incorporates the preceding averments of this Complaint by reference.

37.   At all times relevant to this action, the County of York maintained policies and

customs exhibiting deliberate indifference to the infliction of cruel and unusual punishment on

YCP inmates by YCP Corrections Officers.

38.     As exemplified by the initial "debut" of the Retard Olympics in the 2008-2009

time frame, and its more aggressive continuation in 2013, these policies and customs resulted in

a pattern and practice of corrections officers employed by the County of York, including the

Individual Defendants, devising methods of cruel and unusual punishment that were intended to

amuse corrections officers at the expense of inmates.

39.     By information and belief, the Retard Olympics was not the only aberrant form of

"amusement" involving the abuse of inmates that was concocted by York County Corrections

Officers.

40.     At all times relevant to this action, the County of York, through an official

expected to be identified in discovery, was vested by state law with the authority to make

effective governmental policy on: (i) the prohibition of coerced contests and similarly base

interactions between YCP staff and inmates; (ii) the training of corrections officers on

appropriate levels of contact between corrections officers and inmates; (iii) the detection and

deterrence of contests such as the Retard Olympics when they became known through effective

oversight; and (iv) the effective discipline of corrections officers who engaged in inappropriate

conduct such as the Retard Olympics.

41.     The County of York did not arrange for the adequate training of the Individual

Defendants on the appropriate levels of contact between corrections officers and inmates, and on

the avoidance of the negative impact that such contests would predictably have upon inmates of

YCP.  See 37 Pa. Code § 95.221 (1)

42.     Similarly, the County of York did not provide for adequate oversight of

corrections officers to prevent contests such as the Retard Olympics from taking place, and did not implement effective disciplinary measures when these types of inappropriate conduct became suspected or known to supervisory officials. See 37 Pa. Code § 95.221 (2) (i) ("Force shall be restricted to instances of justifiable self-defense, protection of others, protection of property, prevention of escapes, and to effect compliance with the rules and regulations of the facility when other methods of control are ineffective or insufficient [.]").

43.     As a result of the above described policies and customs, the Individual Defendants violated Mr. Hicks' rights against cruel and unusual punishment, and to a reasonably safe monitored incarceration environment, with impunity.  The Individual Defendants further believed that their illegal actions directed to Mr. Hicks would not be investigated, remedied, or sanctioned, but would instead be tolerated.

44.     The above described policies and customs demonstrated a deliberate indifference on the part of the County of York and its policy makers to the constitutional rights of Mr. Hicks and other inmates in custody at YCP, and were the cause of the violations of plaintiff's rights and resulting damages alleged above.

45.     As a direct and foreseeable result of the actions and/or inactions of the County of York alleged herein, plaintiff sustained damages as alleged above.

    **WHEREFORE,** the Plaintiff, James William Hicks, demands judgment in his favor in an amount exceeding $75,000, to be trebled pursuant to law, attorney's fees pursuant to 42 U.S.C. § 1988, and taxable costs.

### COUNT III
### NEGLIGENCE – RESPONDEAT SUPERIOR
### JAMES WILLIAM HICKS v. THE COUNTY OF YORK

46.     Plaintiff incorporates the preceding averments of this Complaint by reference.

11

47.     The 2009 and 2013 phases of the Retard Olympics occurred as a foreseeable and/or factual result of the negligence of the County of York, through the York County Department of Corrections, in failing to properly hire, train, retrain, monitor and/or discipline the Individual Defendants as to the need to avoid inappropriate contacts between corrections officers and inmates, and to provide a safe and reasonably well-monitored corrections environment for inmates.

48.     The Individual Defendants' violations of 37 Pa. Code § 95.221 (1)-(2) are evidence that the Individual Defendants violated professional duties of reasonable care owed to Mr. Hicks.

49.     As a foreseeable and approximate result of the said acts of the Defendants, Mr. Hicks suffered the following injuries and damages:

a.     The violation of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution to be free from cruel and unusual punishment;

b.     The violation of his right to a reasonably safe and monitored incarceration environment under the Fourteenth Amendment to the Constitution of the United States of America and of Article I of the Constitution of the Commonwealth of Pennsylvania;

c.     Bodily injuries, including bruises, sprains, shoulder injuries, and abrasions of multiple sites;

d.     Shame and humiliation;

e.     Physical pain and suffering;

f.     Ongoing  stigma  among  other  inmates  and  correctional  officers  as  a

participant in the Retard Olympics;

g.     Scarring and other permanent physical injuries;

h.     Emotional trauma and loss of well-being.

**WHEREFORE,** the Plaintiff, James William Hicks, demands judgment in his favor in an amount exceeding $75,000, together with an award of attorney's fees where available pursuant to law, and taxable costs.

## COUNT IV
## TORTIOUS INFLICTION OF EMOTIONAL DISTRESS
## JAMES WILLIAM HICKS v. INDIVIDUAL DEFENDANTS

50.     Plaintiff incorporates the preceding averments of this Complaint by reference.

51.     The above acts of the Individual Defendants were intentional and outrageous, such that a reasonable person, upon being told of them, would find the acts intolerable in civilized society.

52.     In the alternative, each of the Individual Defendants recklessly disregarded and/or negligently failed to perceive a substantial risk that their actions would cause severe emotional distress to Mr. Hicks.

53.     As a foreseeable and approximate result of the said acts of the Defendants, Mr. Hicks suffered severe emotional distress and loss of well-being, including symptoms consistent with PTSD.

54.     As a foreseeable and approximate result of the said acts of the Defendants, the emotional distress inflicted on Mr. Hicks was accompanied by the physical injuries described above.

**WHEREFORE,** the Plaintiff, James William Hicks, demands judgment in his favor in an amount exceeding $75,000, together with an award of punitive damages, attorney's fees, and

taxable costs.

## COUNT V
## TORTIOUS INFLICTION OF EMOTIONAL DISTRESS –RESPONDEAT SUPERIOR
## JAMES WILLIAM HICKS v. COUNTY OF YORK

55.     Plaintiff incorporates the preceding averments of this Complaint by reference.

56.     The Individual Defendants inflicted severe emotional distress on Mr. Hicks, through acts taken within the course and scope of the Individual Defendants' employment as York County Correctional Officers.

57.     If the jury finds that the Individual Defendants were reckless and/or negligent in their treatment of Mr. Hicks, and/or to the risk that Mr. Hicks would suffer severe emotional distress as a consequence, the County of York is responsible for the consequences of that negligence and/or recklessness, under established principles of agency and vicarious liability.

### JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL

58.     Plaintiff demands trial by jury on all issues so triable.

59.     Plaintiff designates Richard H. Maurer, Esquire as trial counsel in this matter.

LAW OFFICES OF RICHARD MAURER, INC.

By: _____

Richard H. Maurer (RM4782)
The Belmont Building
211 N. 13th Street, Suite 801
Philadelphia, PA 19107
(215) 755-9000

GAMBONE LAW OFFICES
Alfonso Gambone (AG4945)
The Belmont Building
211 N. 13th Street, Suite 801
Philadelphia, PA 19107
(215) 755-9000

Dated: September 26, 2014

14